IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

REDMONDS ENTERPRISE, INC.          :
                                    :
                                    :
    v.                              :      Civil No. CCB-16-3943
                                    :
                                    :
CSX TRANSPORTATION, INC.           :

## MEMORANDUM

Plaintiff Redmonds Enterprise, Inc. ("Redmonds") filed a state-court action, subsequently removed to this court, alleging that defendant CSX Transportation, Inc. ("CSX") is liable for defamation, injurious falsehood, and tortious interference with economic advantage or business relationships under Maryland law. Now pending is CSX's motion to dismiss. (Mot. Dismiss, ECF No. 7.) The motion has been fully briefed, and no hearing is necessary to its resolution. *See* Local Rule 105.6. For the reasons discussed below, the motion will be denied.

## BACKGROUND

CSX, a subsidiary of transportation supplier CSX Corporation, operates a railroad through which it provides cargo transportation services and runs a transportation office at a railyard in Jessup, Maryland (the "Jessup railyard" or "railyard"). (Compl., ECF No. 16, ¶ 7.) Redmonds is an automobile transportation company that subcontracts with other automobile transportation companies at the railyard. (*Id.* ¶ 2.) The companies that contract directly with CSX to provide automobile transportation services at the railyard include Moore Transportation, United Road, Hansen & Adkins Auto Transport, Delta Automotive Services, Inc., Virginia Transportation Corporation, and Cassens Transport (the "contractor companies"). (*Id.* ¶¶ 2, 12.) Since January 2013, Redmonds has done "a substantial amount of business" with Moore

1

Transportation and United Road, "actively pursued business" from Hansen & Adkins Auto Transport and Delta Automotive Services, Inc., and "less actively pursued business" from Virginia Transportation Corporation and Cassens Transport. (*Id.* ¶¶ 13–15.)

In or around October 2015, Redmonds experienced a decline in its subcontracting business with Moore Transportation and United Road, its two main customers at the railyard. (*See id.* ¶ 20.) This decline occurred shortly after an incident in which two automobiles at the Jessup railyard were vandalized (the "October 2015 incident"). (*Id.*) The vehicles were physically damaged and "sprayed with profanity-laced messages targeting 'Rick.'" (*Id.* ¶¶ 18–19.) "Rick" is the first name of Rick Orner, the general manager of CSX's transportation office at the Jessup railyard. (*Id.* ¶ 19.)

After the October 2015 incident, the CEO of Redmonds, Mr. Redmond, continued to seek subcontracting work from Moore Transportation and United Road, but his requests were rejected.[1] (*Id.* ¶ 20.) He was informed by agents and employees of those companies that they could not do business with Redmonds due to an e-mail directive they had received from CSX. (*Id.*) In subsequent discussions, Mr. Redmond learned from agents and employees of the contractor companies ("contractor agents") that Mr. Orner had sent an e-mail to the six contractor companies that read: "CSX is banning Redmonds Enterprise from this Jessup railyard. Do not dispatch or transact any further business with Redmonds Enterprise until further notice, due to habitually vandalizing cars" ("CSX e-mail"). (*Id.* ¶¶ 21, 30.) The contractor agents also indicated that a video recording appears to show one of Redmonds' employees in the area of the vandalized automobiles. (*Id.* ¶ 23.) The employee in question ("accused employee")

---

[1] Redmonds acknowledges that it has received "some recent very minor and insignificant business from Moore Transportation." (Compl. ¶ 20.)

has stated that he observed that the vehicles had been vandalized, but he denies having vandalized them. (*Id.* ¶ 27.) He does not have a personal relationship with Mr. Orner. (*Id.* ¶ 28.) Although Redmonds has asked CSX on multiple occasions to view the video recording, see a copy of the CSX e-mail, and meet with Mr. Orner and other employees and agents of CSX to discuss the October 2015 incident and the basis for CSX's allegations against Redmonds, CSX has not accommodated these requests. (*Id.* ¶¶ 24–26.)

On September 28, 2016, Redmonds filed a lawsuit against CSX in the Circuit Court for Anne Arundel County, Maryland. (*See* Civil Cover Sheet, ECF No. 2; Compl.) CSX removed the action to this court on December 8, 2016. (Notice of Removal, ECF No. 1.) CSX subsequently filed the pending motion to dismiss.

## LEGAL STANDARD

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

CSX asks this court to dismiss Redmonds' claims of injurious falsehood (Count I), tortious interference with economic advantage or business relationships (Count II), and malicious and negligent defamation (Counts III and IV), under two separate theories.[2] First, it asserts that Redmonds has failed to state a claim as to each count. Second, it contends that the CSX e-mail is protected by the conditional privilege and therefore cannot form the basis for a defamation, injurious falsehood, or tortious interference claim.

I. Has Redmonds Stated a Claim as to Each Tort?

    A. Defamation

Redmonds contends that the CSX e-mail constitutes defamation under Maryland law. To recover for defamation, the plaintiff must establish that: "(1) the defendant made a defamatory statement regarding the plaintiff to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm thereby." *S.*

---

[2] The court will construe Counts III and IV as a single defamation claim, which Redmonds may prove by establishing either negligence or actual malice. *See Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. 1995).

4

*Volkswagen, Inc. v. Centrix Fin'l, LLC*, 357 F. Supp. 2d 837, 843 (D. Md. 2005) (quoting *Holt v. Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999)).

First, accepting the allegations in the complaint as true, the CSX e-mail clearly constitutes a defamatory statement. The claim that Redmonds "habitually vandaliz[es] cars" is one that "tend[s] to expose the plaintiff to public scorn, hatred, contempt, or ridicule." *Peroutka v. Streng*, 695 A.2d 1287, 1293 (Md. 1997) (defining a "defamatory communication"). Further, because it disparages Redmonds' business reputation, it falls into a category of statements traditionally considered to be defamation per se.[3] *See Southern Volkswagen*, 357 F. Supp. 2d at 843.

Second, Redmonds has alleged facts that plausibly establish falsity. "A 'false' statement is one 'that is not substantially correct.'" *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1213 (Md. 1992)). The complaint repeatedly states that the CSX e-mail is "baseless" and "false." (*See, e.g.*, Compl. ¶¶ 4, 17, 29, 30, 39, 47, 52.) Further, it denies that the video recording shows the accused employee vandalizing the vehicles, (*id.* ¶¶ 23, 27), and asserts that, aside from the circumstances giving rise to this case, Redmonds "ha[s] not been involved in any extraordinary situations or otherwise encountered any significant problems with the automobiles it is subcontracted to collect at the Jessup railyard," (*id.* ¶ 17). In other words, Redmonds directly refutes known evidence and denies any other facts that would support an accusation of habitual vandalism. At the pleading stage, these allegations are sufficient to establish falsity.

CSX contends that Redmonds has failed to establish falsity because the complaint asserts

---

[3] "Whether an alleged defamatory statement is *per se* . . . is a question of law for the court." *Samuels v. Tschechtelin*, 763 A.2d 209, 244–45 (Md. 2000) (citations omitted).

only that it "can be reasonably concluded" that the CSX e-mail's allegation of habitual vandalism is false, rather than conclusively denying it. (Mot. Dismiss at 11 (quoting Compl. ¶ 29).) This argument misreads both the complaint and the plaintiff's burden at the pleading stage. The language to which CSX points is in a section of the complaint explaining the accused employee's response to the claim that he vandalized vehicles. (*See* Compl. ¶¶ 27–28.) Because Redmonds, like the court, must rely on the employee's account, it is appropriate for it to treat the employee's denial as "reasonabl[e]," rather than conclusive, evidence regarding the October 2015 incident. Even without such evidence, however, Redmonds has denied that it *habitually* vandalized vehicles, the claim at issue in this case. (*See, e.g.*, *id.* ¶¶ 4, 17, 29, 30, 39, 47, 52.)

Third, Redmonds alleges that CSX was legally at fault—that is, that CSX acted with negligence or actual malice—in sending the CSX e-mail. *See Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. 1995) ("'Fault,' for the purposes of the prima facie case, may be based either on negligence or constitutional malice.").[4] Negligence "need only be shown by a preponderance of the evidence," whereas malice requires "clear and convincing evidence . . . that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity." *Id.* (citing *Gen'l Motors Corp. v. Piskor*, 352 A.2d 810, 815 (Md. 1976)).

Regarding negligence, the complaint states that CSX "fail[ed] to properly investigate the accusations before it sent the e-mail, or recklessly disregarded whether the accusations were true." (Compl. ¶ 51.) Redmonds supports these assertions with specific allegations, including facts that plausibly establish that the defendant could not have based the CSX e-mail on credible evidence because no such evidence exists. (*See id.* ¶ 17 (stating that Redmonds has not been

---
[4] "Constitutional malice" is also known as "actual malice." *See Shapiro*, 661 A.2d at 217.

involved in any "extraordinary situations" or had any "significant problems" in its subcontracting work at the Jessup railyard, aside from the allegations related to the October 2015 incident); *id.* ¶¶ 23, 27 (explaining that the accused employee has denied vandalizing the vehicles and that any video recording would show him simply walking in the vicinity of the vehicles).)

Regarding actual malice, the complaint asserts that the CSX e-mail "was sent knowing that there was no direct evidence that Plaintiff's accused employee had engaged in the acts of vandalism of the automobiles complained of in the e-mail and specifically intended to defame Plaintiff among its customers and prospective customers." (*Id.* ¶ 46.) Thus, "Defendant knew that the contents of the e-mail communication w[ere] false when it was sent." (*Id.* ¶ 47.) "An averment of knowledge that the statement was false is a sufficient allegation of actual malice." *Southern Volkswagen*, 357 F. Supp. 2d at 844; *see also N.Y. Times v. Sullivan*, 376 U.S. 254, 279–80 (1964) (defining actual malice to include both "knowledge that [the statement] was false" and "reckless disregard of whether it was false or not"). Here, Redmonds makes such an averment, supported by specific allegations. For example, the complaint states that CSX has refused Redmonds' repeated requests to see the CSX e-mail, to discuss its basis, and to view the video recording. (Compl. ¶¶ 24–26, 31–32, 34.) Based on these facts, a jury plausibly could conclude that CSX is unwilling to identify the basis for the CSX e-mail because it knows—and knew at the time the e-mail was sent—that the evidence does not support its habitual vandalism claim.

Finally, Redmonds has sufficiently alleged that it was harmed by the defamatory statement. *See Southern Volkswagen*, 357 F. Supp. 2d at 844. The complaint states that Redmonds' business with Moore Transportation and United Road has "diminished to virtually

nothing" from approximately $6,000 per month in business . . . since January 2013," (Compl. ¶ 22), and that Redmonds "discontinued its attempts to establish and build business relationships with the additional four contractors, who were prospective customers, because of the damaging e-mail communication," (*id.* ¶ 33). It also asserts a causal link between the CSX e-mail and the harm, alleging that Mr. Redmond was "*specifically* told by agents and employees of the contractors that they could not do business with Plaintiff as a result of the e-mail directive by Defendant." (*Id.* ¶ 20.) Further, "if [a] statement is defamatory per se, damages are presumed when a plaintiff can demonstrate actual malice." *Southern Volkswagen*, 357 F. Supp. 2d at 843 (quoting *Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. 2000)); *see also Shapiro*, 661 A.2d at 217–18. For the reasons discussed above, then, Redmonds has satisfied the fourth factor.

      B. Injurious Falsehood

In Maryland, injurious falsehood is similar to defamation, but the plaintiff must satisfy a greater burden of proof and establish special damages. *Horning v. Hardy*, 373 A.2d 1273, 1278 (Md. 1977). One form of injurious falsehood involves the publication of a statement that disparages the plaintiff's business. *See id.* To maintain a claim for injurious falsehood, the plaintiff must establish that the defendant acted with malice in publishing to a third party a known falsity that caused special damages. *Nat'l Bd. for Certification in Occupational Therapy, Inc. v. Am. Occupational Therapy Ass'n*, 24 F. Supp. 2d 494, 511 (D. Md. 1998) (citing *Horning*, 373 A.2d at 1278). "The plaintiff must prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he ha[s] suffered special damage." *Id.* (quoting *Horning*, 373 A.2d at 1278). Redmonds has sufficiently alleged falsity for the reasons discussed above.

8

Unlike in an action for defamation, a showing of negligence is not sufficient to make out a claim for injurious falsehood. *See Horning*, 373 A.2d at 1278. Rather, a plaintiff must establish malice by showing that the defendant "act[ed] for a spite motive, and out of a desire to do harm for its own sake"; "act[ed] for the purpose of doing harm to the interests of the plaintiff in a manner in which he [was] not privileged so to interfere"; or "kn[ew] that what he sa[id was] false, regardless of whether he ha[d] an ill motive or intend[ed] to affect the plaintiff at all." *Id.* As discussed, Redmonds has alleged facts sufficient to support the inference that CSX knew that the contents of the e-mail communication were false when it was sent. (*See* Compl. ¶¶ 24–26, 31–32, 34.) At this stage, that is enough for the claim to proceed.

Further, Redmonds has pled special damages. A plaintiff has pled special damages where it asserts the loss of a present or prospective advantage. *See National Board*, 24 F. Supp. 2d at 511 (citing *Morrissey v. William Morrow & Co.*, 739 F.2d 962, 976 n. 20 (4th Cir. 1984)) (granting defendant's motion for summary judgment on injurious falsehood claim where plaintiff failed to "prove special damage, in the form of loss of a present or prospective advantage"). Redmonds has alleged that the CSX e-mail caused it to lose approximately $6,000 per month in business with Moore Transportation and United Road, (Compl. ¶ 22), and that it has ceased its efforts to generate business with the other four contractor companies because it was informed by agents and employees of at least some of the contractor companies that they could not do business with Redmonds as a result of the CSX e-mail, (*see id.* ¶¶ 20, 33).

    C. <u>Tortious Interference with Economic Advantage or Business Relationships</u>

Finally, Redmonds raises a claim of tortious interference with economic advantage or business relationships, which is "well established in Maryland." *See Macklin v. Robert Logan*

*Assocs.*, 639 A.2d 112, 116 (Md. 1994) (collecting cases). "The tort, which has two general manifestations, is committed when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *Id.* at 117 (citations omitted). Where there is no contract or the contract is terminable at will, "[a] broader right to interfere with economic relations exists." *Id.* (quoting *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984). Here, because the complaint does not identify any applicable contracts, the court will construe Count II as a claim of tortious interference with prospective economic relations, rather than tortious interference with contract.

Tortious interference with prospective economic relations "requires a showing of (1) an intentional and willful act, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, (4) that caused actual damage or loss." *Williams v. Wicomico County Bd. of Educ.*, 836 F. Supp. 2d 387, 398 (D. Md. 2011) (citing *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989)).

Accepting the complaint's account of the CSX e-mail as true, Redmonds has satisfied the first and second factors. It is plausible to conclude, in the absence of contrary facts, that sending an e-mail is an intentional and willful act. Further, it is clear from the e-mail's own language that it was calculated to severely limit or eliminate Redmonds' business at the Jessup railyard. (*See* Compl. ¶ 21 ("CSX is banning Redmonds Enterprise from this Jessup railyard. Do not dispatch or transact any further business with Redmonds Enterprise until further notice, due to habitually vandalizing cars.").)

Regarding the third factor, "the absence of just cause or excuse, or the element of malice, has . . . been determined on a case by case basis." *Natural Design*, 485 A.2d at 675. "[W]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994). Common-law torts such as defamation and injurious falsehood satisfy this requirement, as do showings of "actual malice, such as ill will or spite," a "wrongful act done intentionally without just cause or excuse," and "unlawful acts." *Id.* (internal citations and quotation marks omitted). For the reasons stated above, then, Redmonds has alleged facts sufficient to satisfy the third factor.

Finally, as discussed above, Redmonds has alleged that it suffered actual damage or loss. (*See* Compl. ¶¶ 20, 22, 33.)

\* \* \*

Because Redmonds has alleged facts sufficient to support its claims for defamation, injurious falsehood, and tortious interference, CSX's motion to dismiss on the basis of failure to state a claim will be denied.

II. <u>Does the Conditional Privilege Entitle CSX to Dismissal?</u>

As an alternative basis for dismissal, CSX asserts that "a conditional privilege exists where, as here, a statement is made in furtherance of shared common interests" and that "[t]he privilege is a defense to claims of injurious falsehood, tortious interference with business relationships, and defamation." (Mot. Dismiss at 7.) The court may consider defenses on a 12(b)(6) motion "only 'when the face of the complaint clearly reveals the existence of a

meritorious affirmative defense.'" *See E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996)). In particular, where the defense "derives from a specific factual inquiry and its existence is not clearly indicated in [the] complaint," dismissal on that basis is inappropriate. *See id.*

Maryland recognizes a conditional privilege for certain statements that serve "an important societal interest." *See Woodruff v. Trepel*, 725 A.2d 612, 622 (Md. 1999), *cert. denied*, 731 A.2d 440 (Md. 1999); *see also Miner v. Novotny*, 498 A.2d 269, 270 (Md. 1985) ("For reasons of public policy, the law of defamation recognizes certain communications as privileged, and thereby affords those who publish such communications immunity from liability."). The Court of Appeals has summarized the "four basic common law qualified privileges" as follows:

> (1) The public interest privilege, to publish materials to public officials on matters within their public responsibility; (2) the privilege to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others; (3) the fair comment privilege; and (4) the privilege to make a fair and accurate report of public proceedings.

*Gohari v. Darvish*, 767 A.2d 321, 329 (Md. 2001).

The conditional privilege asserted here is of the second type: the privilege to publish a statement that furthers the common interest. (*See* Mot. Dismiss at 7.) "[A] common interest may include 'interests in property, business and professional dealings' and can 'inhere in business dealings between the publisher and the recipient.'" *Gohari*, 767 A.2d at 329 (quoting *Hanrahan v. Kelly*, 305 A.2d 151, 156 & n.2 (Md. 1973)). "An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a

common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know." *Id.* (quoting *Hanrahan*, 305 A.2d at 156). Whether the conditional privilege applies is a question of law for the court. *Woodruff*, 725 A.2d at 622.

Once the privilege arises, it can be lost if it is abused—for example, where "the publication is made with malice, that is, with knowledge of falsity or reckless disregard for truth." *Mareck v. Johns Hopkins University*, 482 A.2d 17, 21 (Md. 1984) (internal citations and quotation marks omitted).[5] In determining whether the conditional privilege has been abused, "[a]ll relevant circumstances are admissible . . . , 'including the defendant's reasonable belief in the truth of his statements, the excessive nature of the language used, and whether the communication was made in a proper manner and only to proper parties.'" *Woodruff*, 725 A.2d at 623 (quoting *Orrison v. Vance*, 277 A.2d 573, 578 (1971)). This question generally "is for the jury, subject to the censorial power of the judge where there is no evidence of malice, and the burden on the issue is on the plaintiff." *Id.* at 622. Dismissal is inappropriate "where the complaint alleges facts that would support an abuse of that privilege." *Id.* at 623.

Because the facts supporting the applicability of the privilege are not clear on the face of the complaint, and because Redmonds has alleged that CSX knew the contents of the CSX e-mail were false when it was sent, discovery should be permitted to further develop the factual record as to the applicability of the privilege in this case.

---

[5] Other grounds for a finding that the conditional privilege was abused include: "the statement was not made in furtherance of the interest for which the privilege exists"; "the statement is made to a third person other than one whose hearing is reasonably believed to be necessary or useful to the protection of the interest"; and "the statement includes defamatory matter not reasonably believed to be in line with the purpose for which the privilege was granted." *Mareck*, 482 A.2d at 21 (internal citations and quotation marks omitted).

13

## CONCLUSION

For the reasons stated above, the motion to dismiss will be denied. A separate order follows.

<u>May 30, 2017</u>　　　　　　　　　　　　　　　　<u>　　　　/S/　　　　　　　　　　　</u>
Date　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge